Citation Nr: 1212952 
Decision Date: 04/10/12 Archive Date: 04/19/12

DOCKET NO. 09-19 034 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Baltimore, Maryland


THE ISSUES

1. Entitlement to service connection for a skin disability, claimed as pityriasis rosea.

2. Entitlement to an initial compensable rating for residuals of bilateral inguinal hernia.

3. Entitlement to an initial compensable rating for residuals of an umbilical hernia.


ATTORNEY FOR THE BOARD

Heather M. Gogola, Counsel 



INTRODUCTION

The Veteran served on active duty from February 2000 to August 2002. 

This case comes before the Board of Veterans' Appeals (Board) on appeal from a March 2007 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri. Jurisdiction over the case was subsequently transferred to the RO in Baltimore, Maryland.

The Veteran's claim for entitlement to service connection for a skin disability is addressed in the REMAND that follows the order section of this decision.


FINDINGS OF FACT

1. The residuals of bilateral inguinal hernia are productive of no significant symptoms or functional impairment; there has been no recurrence of any inguinal hernia.

2. The residuals of an umbilical hernia are productive of no significant symptoms or functional impairment; there has been no recurrence of the umbilical hernia.


CONCLUSIONS OF LAW

1. The criteria for an initial compensable rating for residuals of bilateral inguinal hernia have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.114, Diagnostic Code 7338 (2011).

2. The criteria for an initial compensable rating for residuals of an umbilical hernia have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002); 38 C.F.R. §§ 3.321, 4.1, 4.2, 4.7, 4.114, Diagnostic Code 7338 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veterans Claims Assistance Act of 2000

The Veterans Claims Assistance Act of 2000 (VCAA), codified in pertinent part at 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2011), and the pertinent implementing regulation, codified at 38 C.F.R. § 3.159 (2011), provide that VA will assist a claimant in obtaining evidence necessary to substantiate a claim but is not required to provide assistance to a claimant if there is no reasonable possibility that such assistance would aid in substantiating the claim. They also require VA to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. As part of the notice, VA is specifically to inform the claimant and the claimant's representative, if any, of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. Although the regulation previously required VA to request that the claimant provide any evidence in the claimant's possession that pertains to the claim, the regulation has been amended to eliminate that requirement for claims pending before VA on or after May 30, 2008.

The Board also notes that the United States Court of Appeals for Veterans Claims (Court) has held that the plain language of 38 U.S.C.A. § 5103(a) requires that notice to a claimant pursuant to the VCAA be provided "at the time" that, or "immediately after," VA receives a complete or substantially complete application for VA-administered benefits. Pelegrini v. Principi, 18 Vet. App. 112, 119 (2004).

The Veteran was provided complete VCAA notice by a letter mailed in October 2006, prior to the rating decision on appeal. 

In addition, service treatment records and post service treatment records have been obtained, and an appropriate VA examination was provided. The Board finds that the examination report is adequate to allow proper adjudication of the issues on appeal. The examiner conducted complete examinations, recorded all findings considered relevant under the applicable diagnostic codes, and considered the full history of the disability. There is no indication that either disability has increased in severity since the most recent examination of the disabilities.

The Veteran has not identified any other evidence that could be obtained to substantiate his claims. The Board is also unaware of any such evidence. Therefore, the Board is satisfied that VA has complied with the duty to assist requirements of the VCAA and the pertinent implementing regulation. 

 Legal Criteria

Disability evaluations are determined by the application of the Schedule For Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4 (2011). 

Where the appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods.

In cases of functional impairment, evaluations are to be based upon lack of usefulness, and medical examiners must furnish, in addition to etiological, anatomical, pathological, laboratory and prognostic data required for ordinary medical classification, a full description of the effects of the disability upon the person's ordinary activity. 38 C.F.R. § 4.10.

The Veteran is currently rated under 38 C.F.R. § 4.114, Diagnostic Code 7338. Under Diagnostic Code 7338, a noncompensable rating is warranted for a hernia that is not operated but remedial. A noncompensable rating is also warranted for small, reducible hernia, or hernia without true protrusion. A 10 percent rating is warranted for a hernia that is postoperative recurrent, readily reducible and well supported by truss or belt. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under laws administered by the Secretary. The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102 (2010); see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 

Analysis

In accordance with 38 C.F.R. §§ 4.1, 4.2 (2011) and Schafrath v. Derwinski, 1 Vet. App. 589 (1991), the Board has reviewed all evidence of record pertaining to the history of the service-connected disabilities. The Board has found nothing in the historical record which would lead to the conclusion that the current evidence of record is not adequate for rating purposes. Moreover, the Board is of the opinion that this case presents no evidentiary considerations which would warrant an exposition of remote clinical histories and findings pertaining to the disabilities. 

In the March 2007 rating decision on appeal, the RO granted service connection for the disabilities at issue and assigned noncompensable ratings, effective August 8, 2005. 

A February 2006 private treatment record indicates complaints of a tender lymph node in the inguinal area. Examination showed that the abdomen was soft and nontender, with no evidence of rebound, guarding, masses, tenderness, or hernia.

The Veteran was afforded a VA examination in October 2006. The examiner noted bilateral inguinal hernia repairs performed in 2002 with no hernia recurrences. The Veteran complained of occasional left groin pain but indicated that he did not currently receive treatment. Examination revealed that there was no inguinal hernia present. There was also no evidence of tenderness to palpation in the left inguinal area or in the umbilicus. There was no groin surgical incision present. The examiner provided a diagnosis of status post bilateral endoscopic inguinal hernia repairs with residuals as noted.

An April 2007 private record shows complaints of mild pain in the left inguinal area. Examination revealed that the abdomen was soft and nontender, with no evidence of rebound, guarding, masses, tenderness or hernia.

Private treatment records from Patel, Ramanan, and Associates dated from March 2009 to July 2010 reveal no evidence of any abdominal or groin complaints. In fact, the December 2009 record shows that the Veteran had no acute complaints, and examinations consistently showed that the abdomen was nontender with no organomegaly. 

The foregoing medical evidence shows that there has been no recurrence of any inguinal or umbilical hernia. In addition, the in-service endoscopic procedures have not resulted in any noticeable or symptomatic scarring. Moreover, the VA examination performed by an objective professional disclosed no tenderness or other significant residuals of the procedures. Furthermore, the private treatment records prepared during the pendency of this claim note some inguinal complaints but are consistent with the VA examination report in showing no recurrence of any hernia and no significant residuals of the in-service procedures. The Board has considered the Veteran's contention that he has experienced a great deal of pain as a result of the disabilities, but has not found his self-serving statements to be as probative as the objective medical evidence prepared by skilled professionals. 

Accordingly, the Board must conclude that the disabilities are properly rated as noncompensably disabling under the schedular criteria. In reaching this decision, the Board has considered the doctrine of reasonable doubt but has determined that it is not applicable to these claims because the preponderance of the evidence is against the claims.

The Board has also considered whether referral of this case to the Director of the Compensation and Pension Service for an extra-schedular consideration is warranted. In this regard, the Court has held that the threshold factor for extra-schedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. Thun v. Shinseki, F.3d 1366 (Fed. Cir. 2009).

Here, as discussed above, the evidence shows no significant symptoms or functional impairment due to the disabilities. The criteria for a noncompensable rating reasonably describe the Veteran's disability level. Thus, as the Veteran's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral for an extraschedular evaluation is required. 


ORDER

Entitlement to an initial compensable rating for residuals of bilateral inguinal hernia is denied.

Entitlement to an initial compensable rating for residuals of an umbilical hernia is denied. 



REMAND

The Board finds that additional development is required before the Veteran's remaining claim on appeal is decided.

The Veteran contends that he has a skin disability related to his active service. Specifically, the Veteran contends that he had no skin problems before his naval service, was treated for a skin disorder during service, and has continued to experience problems and seek treatment for a skin disability since his discharge from service. 

Service treatment records reveal that in October 2000, the Veteran was treated for a cyst on the left thigh, and possible cellulitis. An April 2002 emergency room record documents complaints of a rash on the right upper arm and back. A diagnosis of pityriasis rosea was provided and the physician recommended exposing the lesions to sunlight, aveeno bathes, calamine lotion, and hydrocortisone to treat the lesions. 

On his May 2002 report of medical history, the Veteran reported a history of skin diseases, described as psoriasis diagnosed in April 2002. The reviewing physician indicated that the psoriasis had been treated with hydrocortisone and oatmeal baths, but was not otherwise disabling. The May 2002 separation examination disclosed mild psuedofolliculitis barbae.

Post service treatment records dated in February and April 2007 reflect treatment for eczematous dermatitis on the hands and upper back. A July 2010 private treatment record notes an assessment of dermatitis posterior to the left auricle. 

The Veteran also stated on his VA Form 9 that he had been to a dermatologist after being referred by his primary care physician. However, these records have not been obtained and associated with the claims file.

The Board also notes that the Veteran was afforded a VA examination in October 2006. However, the VA examination report is inadequate for adjudication purposes. Specifically, the examiner did not provide a definitive diagnosis of any present skin condition. Instead the examiner confusingly stated that on examination, the Veteran had a distinct furfuraceous appearance to dermatitis that was present on the back, but then provided an impression of rule out tinea versicolor and contact dermatitis. Thereafter, the examiner stated that the Veteran needed a dermatology consultation and treatment. Finally, the examiner concluded that it would be mere speculation to state that the conditions were due to active service, but failed to provide an explain as to why it would be speculative to relate any current skin disorder to military service. 

Moreover, the Board notes that the VA examination report is very brief and it does not appear from the information provided that the VA examiner took an adequate history from the Veteran when providing the examination. In addition, it does not appear that the examiner took into account the skin disorders that were diagnosed and treated during the Veteran's active service. The Board further notes that the recommended dermatology consult was not performed, and pertinent medical evidence was added to the record subsequent to the VA examination.

When VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Therefore, the Board finds that another VA examination by a physician with appropriate expertise is required to determine the nature and etiology of all skin disorders present during the pendency of this claim.

Accordingly, this case is REMANDED to the RO or the Appeals Management Center (AMC), in Washington, D.C., for the following actions:

1. The RO or the AMC should undertake appropriate development to obtain any outstanding records pertinent to the issue on appeal, to include the private dermatology records referenced by the Veteran on his VA Form 9. 

2. Then, the Veteran should be afforded a VA examination by a physician with sufficient expertise to determine the nature and etiology of all skin disorders present during the pendency of this claim. The claims file must be made available to and reviewed by the examiner. Any indicated studies must be performed. 

Based upon the examination results and the review of the record, the examiner should provide an opinion with respect to each skin disorder present during the pendency of this claim as to whether there is a 50 percent or better probability that it is etiologically related to the Veteran's active service. For the purposes of the opinion the examiner should presume that the Veteran is a reliable historian. 

The supporting rationale for all opinions expressed must be provided. 

3. The RO or the AMC should undertake any other development it determines to be warranted.

4. Then, the RO or the AMC should readjudicate the appellant's claim in light of all pertinent evidence and legal authority. If the benefit sought on appeal is not granted to the appellant's satisfaction, the appellant should be provided a supplemental statement of the case and afforded the requisite opportunity to respond before the case is returned to the Board for further appellate action. 

By this remand, the Board intimates no opinion as to any final outcome warranted. 

The appellant need take no action until he is otherwise notified, but he may furnish additional evidence and/or argument during the appropriate time frame. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. § § 5109B, 7112 (West Supp. 2011).



____________________________________________
Shane A. Durkin
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs